# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DONALD LABER, et al., | ) | CASE NO.  5:15-cv-55 |
| | ) | |
| PLAINTIFFS. | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| UNITED STEEL, PAPER AND | ) | |
| FORESTRY, RUBBER, | ) | |
| MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTIRAL AND | ) | |
| SERVICE WORKERS | ) | |
| INTERNATIONAL UNION, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is a series of motions that were filed shortly after this lawsuit was removed from state court. Plaintiffs have filed a motion to remand (Doc. No. 7 ["Mot. to Remand"]), to which defendants have responded (Doc. No. 11 ["Opp'n"]), and plaintiffs have replied (Doc. No. 12 ["Reply"]). Plaintiffs have also filed a motion to stay proceedings pending a ruling on the motion to remand (Doc. No. 13), which stands unopposed. Defendants, in turn, have moved for judgment on the pleadings (Doc. No. 9), which is also unopposed. Because the Court finds that this matter must be remanded to state court for want of federal jurisdiction, it need not (and, at least with respect to the motion for judgment on the pleadings, cannot) address the other pending motions.

## I.  BACKGROUND

The removal of this action from state court marks the second time the parties have been before this Court. For the sake of clarity, the first case, Case No. 5:13cv640,

shall be referred to as "Laber I," while the present case shall be denoted as "Laber II." To fully appreciate the current factual and procedural posture of this case, however, it is necessary to go back to the very beginning, before the filing of Laber I.

### A.  The VSA and Subsequent Bankruptcy Proceedings

In 2006, plaintiffs, Donald Laber and Douglas Whack, terminated their employment with HLI Commercial Highway, Inc. ("HLI"), a subsidiary of Hayes Lemmerz International, Inc. ("Hayes Lemmerz"), by taking advantage of a one-time voluntary separation agreement ("VSA") entered into between HLI and defendants, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the "International") and Local 21 (the "Local"). (Laber I, Doc. No. 1-2, Compl. at ¶¶ 6-11.)[1] Plaintiffs had been members of the Local and were covered by a collective bargaining agreement ("CBA") entered into between HLI and the Local. (Compl. ¶¶ 1, 8.) In exchange for their voluntary separation from HLI, plaintiffs received certain benefits, including a cash award and extended healthcare benefits. (Laber I, Doc. No. 1-2, VSA at 19-20.)[2]

On May 11, 2009, Hayes Lemmerz filed for Chapter 11 bankruptcy. (FAC ¶ 7.) The FAC provides that, beginning in July, 2009, and unbeknownst to plaintiffs, Hayes

---

[1] To paint a complete picture, it is necessary to draw from the undisputed facts from the original complaint ("Compl.") as well as the factual allegations contained in the first amended complaint ("FAC"), which is plaintiff's current pleading, as each complaint contained different allegations. Because neither pleading was filed by the parties in this case, the Court shall take judicial notice of these filings from Laber I.

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

2

Lemmerz and the International entered into negotiations to modify retiree benefits. (*Id.* ¶ 9.) On November 18, 2009, the parties reached an agreement, which was ultimately approved by the bankruptcy court. The effect of the agreement was a reduction of the medical benefits of *all* retirees of Hayes Lemmerz and its affiliates, including those who—like plaintiffs—had exercised their rights under the VSA. (Compl. ¶¶ 19-26; *see* FAC ¶¶ 9, 12, 30, 41, 60, 72.)

**B.    Laber I**

On February 25, 2013, plaintiffs brought suit against defendants in the Summit County Court of Common Pleas. The original complaint contained two claims, one for breach of contract and a second claim for tortious interference with contractual and business relations, with the VSA serving as the foundation for both claims. It was plaintiffs' position that defendants wrongfully deprived them of their rights under the VSA when they compromised those rights in bankruptcy. On March 25, 2013, defendants removed the action to this Court, maintaining that plaintiffs' claims were completely preempted by § 301 of the Labor Management Act, 29 U.S.C. § 185, "which provides federal jurisdiction over suits for 'violation of contracts between an employer and a labor organization.'" (Laber I, Doc. No. 1, Notice of Removal, at 3, quoting *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 215 (6th Cir. 1994)).

Plaintiffs subsequently moved to remand, insisting that their claims fell outside the reach of § 301 preemption as they did not rely upon, or even reference, the CBA. In a memorandum opinion, dated January 31, 2014, the Court denied the motion to remand. While the complaint was devoid of reference to the CBA, the Court found that the VSA, itself, qualified as a "labor contract" under § 301. (Laber I, Doc. No. 14 ["Memo.

3

Op."] at 172.) In reaching this conclusion, the Court emphasized that the VSA was the result of labor negotiations that addressed "an important issue arising out of the employment relationship," and "had the effect of redefining rights under the collective bargaining agreement . . . in favor of specific benefits gained through the one-time opportunity to retire early." (*Id*., citing *Thomas v. LTV Corp*., 39 F.3d 611, 618 (5th Cir. 1994)).  Because plaintiffs' state law claims were entirely dependent upon an interpretation of the VSA, and the rights claimed by plaintiffs arose solely from that labor contract, the Court determined that the state law claims were completely preempted by federal law. (*Id*. at 172-73, citing, among authorities, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)).

Following the Court's denial of reconsideration, plaintiffs revived an earlier alternative motion to amend the complaint to bring a fraudulent misrepresentation claim under Ohio law. (Laber I, Doc. No. 22 ["Renewed Mot. to Amend"] at 202; Doc. No. 17 ["Consol. Mot."].) According to plaintiffs, they intended to replace their preempted contract-based claims with a single claim that they were deliberately misled by defendants to believe that their rights would be protected in bankruptcy. The Court granted plaintiffs leave to file an amended complaint that contained the proposed fraud claim, provided the resolution of this new claim would not require interpretation of the VSA and the rights sought by the claim did not emanate from that labor agreement. (Laber I, Doc. No. 25 ["Op. & Order"] at 244.)

On October 2, 2014, plaintiffs filed the FAC. Through this pleading, plaintiffs allege that statements made by defendants' representatives led them to believe that their rights would be represented in bankruptcy, and caused them to forego pursing

4

certain legal remedies. Plaintiffs aver that they had two meetings with Jack Hefner, the "manager" of the Local. (FAC ¶¶ 18, 31.) During the first meeting, in May of 2010, plaintiffs allege that Hefner promised to put plaintiffs in touch with the International's lawyer, David Jury, "who would be able to help them protect their healthcare benefits in the bankruptcy case." (*Id*. ¶¶ 18, 21.) Hefner dialed Jury's office and gave the phone to Don who left a detailed message asking Jury to contact him. (*Id*. ¶ 22.) Plaintiffs claim that defendants knew, at the time of this meeting, that the International had already reached an agreement with Hayes Lemmerz about retirement benefits, and that plaintiffs' rights had not been brought to the attention of the bankruptcy court. (*Id*. ¶ 23.)

The second meeting between plaintiffs and Hefner took place in June of 2010, at which time Hefner was joined by certain employees of Hayes Lemmerz. (*Id*. ¶ 31.) Plaintiffs allege that—before, during and after the meeting—Hefner made statements to plaintiffs promising that defendants, "and David Jury in particular, were committed to helping maintain [plaintiffs'] healthcare benefits and would take care of the problem." (*Id*. ¶ 32.) According to plaintiffs, this was a lie, as defendants "had no intention of helping [plaintiffs] maintain their healthcare benefits." (*Id*. ¶ 34.)

Plaintiffs also allege that they had multiple communications between May and October of 2010 with Jury, who was, in fact, the associate general counsel for the International. (*Id*. ¶¶ 42-60.) Plaintiffs aver that Jury repeatedly assured them that he would "take care" of their benefits, and even wrote a letter to Hayes Lemmerz purporting to request that plaintiffs' healthcare benefits be fully restored. These oral and written communications had the effect of misleading plaintiffs into believing that Jury represented them as their attorney with respect to the bankruptcy case when in fact his only

5

professional loyalties were with the International. (*Id*. ¶¶ 50-54.)

Plaintiffs allege that they reasonably relied, to their detriment, on the misrepresentations of Hefner and Jury, causing them to fail to diligently protect their rights. (*Id*. ¶¶ 67-69.) Specifically, plaintiffs insist that they would have:

> acted differently if they had been told the truth, including by retaining counsel; seeking leave to file a late claim in the bankruptcy case while it was still pending; seeking leave to bring a hybrid 301 claim within the six-month statute of limitations; or, at the very least, dealing with the local and the international more as adversaries than allies in seeking to protect their healthcare benefits.

(*Id*. ¶ 70.) Plaintiffs further allege that they have "sustained actual and consequential damages in that they made financial commitments relying on these misrepresentations and concealments which they otherwise would not have made, including but not limited to purchases of consumer goods. Further, as a result of these misrepresentations and concealments, [plaintiffs] have incurred debts they otherwise would not have incurred; have lost legal and financial opportunities they otherwise would have had; have lost healthcare coverage; and have been induced by the [I]nternational and the [L]ocal into sleeping on their rights." (*Id*. ¶¶ 71-72.) The FAC makes no mention of the CBA or the VSA. Finding no basis for federal jurisdiction, the Court remanded the matter to state court.

### C.    **Laber II**

The parties litigated the matter in state court for several months before defendants once again removed the action to this Court. As a basis for removal, defendants identified certain discovery responses and another pretrial filing that they believe revealed the true nature of plaintiffs' fraud claim—that it was "in fact predicated on the [VSA] in a manner that renders [it] subject to complete preemption under § 301 and hence

removable[.]" (Laber II, Doc. No. 1, Notice of Removal, at 4.) In particular, defendants'
notice relied upon a pretrial statement that identified the "value of their lost health care
benefits" as part of plaintiffs' damages. (Notice of Removal at 5; Doc. No. 1-1, Plaintiffs'
Pretrial Statement, at 13.) Defendants also cited a response to an interrogatory discussing
the basis for the lost hybrid § 301 claim. (Notice of Removal at 5; Doc. No. 1-2, Plaintiffs'
Interrogatory Responses, at 19.)

## II.  PLAINTIFFS' MOTION TO REMAND

### A.  Standard of Review

A defendant may remove to federal court only actions that originally could
have been filed in federal court. *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 430, 119 S.
Ct. 2069, 144 L. Ed. 2d 408 (1999); *Caterpillar*, 482 U.S. at 392. As a court of limited
jurisdiction, a federal district court has the duty to remand a case where federal jurisdiction
is lacking. *See* 28 U.S.C. § 1447(c). All doubts as to the existence of federal jurisdiction are
resolved in favor of remand. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)
(citation omitted).

Where, as here, diversity is incomplete, a federal court will not have
jurisdiction over an action unless there is the presence of a federal question. To remove a
case on the basis of this doctrine, "the federal question ordinarily must appear on the face
of a properly pleaded complaint; an anticipated or actual federal defense generally does not
qualify a case for removal." *Jefferson County*, 527 U.S. at 430-31 (citing *Louisville &
Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908)). In the
normal course of events, the job of the district court is limited to examining the well-
pleaded complaint allegations to determine whether "'federal law creates the cause of

7

action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law . . . , in that 'federal law is a necessary element of one of the well pleaded . . . claims.'" *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 808, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 462 U.S. 1, 27-28 and 13, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)).

### B.        Section 301 Preemption

"One of the few exceptions to the well-pleaded complaint rule is complete preemption, which 'applies in circumstances in which Congress may intend the preemptive force of a federal statute to be so extraordinary that any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Paluda v. ThyssenKrupp Budd Co*., 303 F. App'x 305, 308 (6th Cir. 2008) (quoting *Mikulski v. Centerior Energy Corp*., 501 F.3d 555, 560 and 563 (6th Cir. 2007) (en banc) (further quotation marks and citations omitted)). Where applicable, the preemptive force of § 301 is so powerful that it entirely displaces any state cause of action for violation of contracts between an employer and a union. *Caterpillar*, 482 U.S. at 394 (citations omitted). Thus, where the essence of a state law claim is a provision in a collective bargaining agreement, that claim arises under federal law, and is completely preempted. *Id*. at 394 (quoting *Avco Corp. v. Machinists*, 390 U.S. 557, 558, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968)).

While § 301 preemption is clearly expansive, not all state law claims finding their genesis in labor relations are preempted. *See Livadas v. Bradshaw*, 512 U.S. 107, 123, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994) (Section 301 does not "pre-empt nonnegotiable rights conferred on individual employees as a matter of state law . . . ."). "[I]t is the legal

8

character of a claim, as 'independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." *Livadas*, 512 U.S. at 123-24 (internal citations omitted).

The Sixth Circuit employs a two-step inquiry for determining whether a claim is sufficiently independent of the collective bargaining agreement to survive complete preemption under § 301 of the LMRA:

> We first look to whether "resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement," and, alternatively, "whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law." *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004). "In short, if a state-law claim fails either of these two requirements, it is preempted by § 301." *Id*. This Court has also noted that "where a plaintiff's state-law claims cannot be directly connected to the terms of the CBA, they are not preempted," and that "merely consulting a CBA in the course of adjudicating state law claims is not enough." *Valinski v. Edison*, 197 [F. App'x] 403, 409 (6th Cir. 2006).

*Klepsky v. United Parcel Serv., Inc.,* 489 F.3d 264, 269-70 (6th Cir. 2007); *see Alongi v. Ford Motor Co*., 386 F.3d 716, 724 (6th Cir. 2004) (citing *DeCoe*, 32 F.3d at 216).

### C.    "Other Paper" Under 28 U.S.C. § 1446(b)(3)

Plaintiffs' motion to remand raises procedural and substantive challenges to defendants' removal of this action. Beginning with the procedural attack, plaintiffs insist that their pretrial statement and answers to interrogatories do not constitute "other paper" that can trigger removal. A defendant removing an action to federal court must file a notice of removal, and, generally, that notice must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(a) &

(b)(1). While the 30 day removal period is not jurisdictional, "it is mandatory and must be strictly applied." *Pillin's Place, Inc. v. Bank One, Akron, N.A.*, 771 F. Supp. 205, 206 (N.D. Ohio 1991) (quotation marks and citation omitted).

However, "[i]f the initial pleading lacks solid and unambiguous information that the case is removable, the defendant must file the notice of removal 'within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper' that contains solid and unambiguous information that the case is removable." *Berea v. Mesa Med. Grp.*, *PLLC*, 779 F.3d 352, 364 (6th Cir. 2015) (quoting § 1446(b)(3) (further citation omitted)). In *Berea*, the Sixth Circuit recently explored the meaning of the term "other paper" in § 1446(b)(3). Relying on a legal treatise on the subject, the court held that "as a general matter, 'documents such as deposition transcripts, answers to interrogatories and requests for admissions, . . . amendments to ad damnum clauses of complaints, and correspondence between the parties and their attorneys or between the attorneys' may constitute 'other papers' under § 1446(b)(3)." *Id.* at 365 (quoting Charles Alan Wright, et al., 14C *Federal Practice and Procedure* § 3731 (4th ed. 2009)). Under Sixth Circuit precedent, plaintiffs' discovery responses and pretrial statement would seem to qualify as "other paper" for purposes of removal.

Still, plaintiffs suggest that removal on the basis of these "other papers" was improper because there was no ambiguity in the FAC such that plaintiffs' subsequent statements in discovery constituted solid and unambiguous information suggesting the removability of the case. While defendants note that "examination of the FAC will show the obvious care Plaintiffs took to avoid any reference to [the VSA]" (Opp'n at 222), plaintiffs maintain that the FAC makes repeated references to the relevant contracts and

10

agreements. (Mot. to Remand at 128, citing paragraphs of the FAC.) They argue that these references did not convert a tort action into a breach of contract claim, but merely served to satisfy the "particularity" requirement for pleading a fraud claim under the civil rules. (*Id*.) Because they suggest that there was no ambiguity in the FAC that the subsequent discovery responses could clarify, plaintiffs insist that removal was improper.

Though couched in terms of a procedural defect, plaintiffs' argument really goes to their substantive attack upon the removal; namely, that their fraud claim is not preempted by federal law. Although the Court disagrees with defendants' position that plaintiffs' subsequent statements reveal that the fraud claim is preempted, the notice of removal was filed within 30 days of the filing of these statements. Consequently, the Court finds that the removal was timely.

### D.       Plaintiffs' Discovery Responses and Pretrial Statement

In plaintiffs' pretrial statement, filed in state court on December 29, 2014, plaintiffs represent that they "agreed to a voluntary separation agreement with Hayes Lemmerz in 2006 *guaranteeing* them health care benefits." (Doc. No. 1-1 ["Pl. Pretrial Stm."] at 11, emphasis added.) Under the heading of "Itemization of Damages," plaintiffs explain that "compensatory damages for fraud include the *value of their lost health-care benefits* over the course of their retirements, and expenses and debts they incurred in detrimental reliance on the belief their benefits would be protected." (*Id*. at 13, emphasis added.) And, in response to an interrogatory asking plaintiffs to "[i]dentify any agreement that forms the basis, in whole or in part, of the 'hybrid 301 claim' referenced [in the FAC], plaintiffs stated: "Without waiving any objections, there is no such 'agreement,' unless the labor management agreement between Plaintiffs' former employer and Plaintiffs' former

11

union is characterized as such; Plaintiffs are referring to the fact that their legal rights were prejudiced by Defendants' misrepresentations and concealments. For example, Plaintiffs were misled into sleeping on their rights to possibly bring a hybrid 301 claim within the statute of limitations." (Doc. No. 1-2 ["Pl. Res. Int."] at 19.)

Plaintiffs complain that defendants have "seize[d] on any mention of contracts in Plaintiffs' Pretrial Statement and interrogatory responses, without citing any authority that these references convert a common law fraud case based on an implied attorney-client relationship into a case for breach of a labor-management agreement." (Mot. to Remand at 129, footnote omitted.) In doing so, plaintiffs accuse defendants of deliberately "confus[ing] well-settled Ohio law on the measure of damages for fraud, which includes both 'out-if-pocket' damages and 'benefit-of-the-bargain' damages without converting the fraud claim into one for breach of contract." (*Id*.) Defendants entertain a different view, suggesting that these post-pleading statements establish plaintiffs' "claim *is* dependent on the VSA." (Opp'n at 218, emphasis in original.)

### 1. Detrimental Reliance

Plaintiffs' sole cause of action raises a claim for state law fraudulent misrepresentation. Under Ohio law, the elements of fraudulent misrepresentation are: "(1) a representation or, when there is a duty to disclose, a concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance." *Stuckey v. Online Resources Corp*., 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011) (citing

*Williams v. Aetna Fin. Co*., 700 N.E.2d 859, 868 (Ohio 1998)). Keying in on the last two elements, defendants argue that plaintiffs' "allegations of detrimental reliance are predicated on the contention that the VSA gave them special rights to healthcare benefits, which they claim they would have been able to protect but for the Defendants' alleged fraud." (Opp'n at 220.) Defendants "strongly disagree" that plaintiffs' healthcare benefits would have survived bankruptcy. As such, defendants maintain that interpretation of the VSA will be necessary in order to resolve plaintiffs' claim. (*Id*.)

The Sixth Circuit rejected a similar argument in *CNH Am. LLC v. UAW*, 645 F.3d 785 (6th Cir. 2011). There, an employer brought suit claiming that the union made certain misrepresentations to the employer regarding its authority to bind retirees to an agreement addressing retirement benefits. The union argued that it could largely defeat the employer's fraud claims by demonstrating that the agreement did not release the employer's liability to the retirees. While the court acknowledged that this defense may ultimately win the day, it emphasized that the district court "did not *have* to decide" this issue to resolve plaintiff's claim, and that the question of whether the agreement amounted to a release went to damages, and not the substance of the tort claims, which were independent of the agreement and could not support preemption. *Id*. at 792 (emphasis in original). Rather, the fraudulent misrepresentation claims merely required the court to determine whether the union made the representation that it had the authority to bind the retirees and whether the employer's reliance on that representation was reasonable. *Id*. (citing *Alongi*, 386 F.3d at 726).

Similarly here, the court (or a jury) will need to determine whether defendants misrepresented to plaintiffs the role the unions and counsel would have in

protecting plaintiffs' retirement benefits, and whether plaintiffs' reliance on these alleged representations was reasonable. *See Alongi*, 386 F.3d at 726. Whether or not the healthcare benefits provided for in the VSA would have survived a challenge in bankruptcy goes to plaintiffs' damages, and defendants' affirmative defense that plaintiffs' damages are speculative cannot support federal jurisdiction. *See DeCoe*, 32 F.3d at 216 (reliance on labor contract as an affirmative defense could not support a finding of § 301 preemption); *see generally Jefferson County*, 527 U.S. at 430-31. This first argument in support of preemption fails.

### 2.  Value of the Benefits

Alternatively, defendants argue that, even if plaintiffs' subsequent statements are—as plaintiffs suggest—relevant only to damages, "the need to interpret the [VSA] would still trigger § 301 preemption." (Opp'n at 220.) Defendants cite *Klepsky* in support. The plaintiff in *Klepsky* alleged that he was discharged in violation of the Ohio Whistleblower Protection Act and Ohio public policy. *Klepsky*, 489 F.3d at 266. Although the plaintiff's claims did not support preemption on their own, the court found that the "the *relief* [plaintiff] seeks is a different question, and does support preemption here." *Id*. at 270 (emphasis in original). Noting that "Ohio follows the traditional common law doctrine of employment-at-will," the court found that the plaintiff's request for reinstatement was "enough to support preemption here, as it would require interpretation for the terms of the CBA, and implicate[] a right created under the CBA." *Id*. Continuing, the court reasoned that, "[e]ven if [plaintiff] [did] not explicitly rely on terms of the CBA pertaining to reinstatement, his request for reinstatement would, at a minimum, seem to implicate such rights and require interpretation of the CBA." *Id*.

14

Unlike the complaint in *Klepsky*, plaintiffs' FAC does not seek to enforce the VSA or even implicate a right created under the VSA. Instead, plaintiffs merely identify the *value* of the lost healthcare benefits under the VSA as one measure of part of their damages. *See Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514 (6th Cir. 2012) (distinguishing *Klepsky* on ground that remedy sought did not flow from CBA); *see, e.g., Nguyen v. Ashland Oil, Inc.*, No. 2:06- cv-0269, 2007 WL 869717, at *3 (S.D. Ohio Mar. 20, 2007) ("Hers is not a lawsuit claiming wrongful withholding of ERISA covered plan benefits; it is a lawsuit claiming race and sex discrimination and retaliation resulting in damages, one component of which is a sum owed under the provision of the GM plan."); *Sears v. Chrysler Corp.*, 884 F. Supp. 1125, 1131 (E.D. Mich. 1995) (In finding no ERISA preemption, court noted that plaintiff "does not seek benefits due to her under the terms of ERISA-governed plans. Rather, she seeks *the value of benefits* she would have received if she had continued to work for Chrysler.") (emphasis in original); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002) (in finding preemption of a contract claim seeking to clarify ERISA benefits, court distinguished tort claim wherein the plaintiff's "incidental damages award merely includes a loss of [ERISA] benefits").

The mere fact that the labor contract may need to be consulted to determine damages does not render the state claims preempted. *See Livadas v. Bradshaw*, 512 U.S. at 124 (offering as example of a "consultation" of a labor agreement that would not render state claim preempted a case wherein consultation of the CBA was necessary to determine rates of pay for damages flowing from state law discrimination) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413, n.12, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988)); *CNH Am.*, 645 F.3d at 793 ("We break no new ground in holding that a tort claim

15

that turns entirely on extra-contractual or pre-contractual conduct is not preempted even when damages are calculated by looking to a collective bargaining agreement.") Plaintiffs' inclusion of the value of their lost healthcare benefits as a component of damages, therefore, cannot support federal jurisdiction.

The Court concludes, once again, that plaintiffs' fraudulent misrepresentation claim is not preempted by § 301. The allegations in the FAC do not require a court (or a jury) to apply the provisions of the VSA, but only to determine whether defendants fraudulently misrepresented their intentions to defend plaintiffs' negotiated healthcare benefits, and whether plaintiffs reasonably relied on these representations to their detriment. *See Alongi*, 386 F.3d at 726. Neither of these questions turns on an interpretation of the VSA, and the rights plaintiffs are asserting flow from state law. *See CNH Am.*, 645 F.3d at 791-92. The fact that the VSA may need to be examined to address defendants' affirmative defense or to calculate the value of the lost benefits does not convert this state law tort claim into a preempted contract claim under § 301. *See id.*; *Alongi*, 386 F.3d at 726.

### E.    Plaintiffs' Requests for Costs and Fees

Plaintiffs have requested that the Court award costs and attorney fees associated with their efforts to oppose defendants' removal of this action. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A district court has "considerable discretion" to award fees and costs for improper removal. *Powers v. Cottrell, Inc.*, 728 F.3d 509, 514 (6th Cir. 2013) (citation omitted); *see*

*Kent State Univ. Bd. of Trustees v. Lexington Ins. Co*., 512 F. App'x 485, 488 (6th Cir. 2013). Notwithstanding this discretion, and "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal**.**" *Martin v. Franklin Capital Corp*., 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id*.; *see Kent State Univ. Bd. of Tr.*, 512 F. App'x at 488 ("[The Sixth Circuit] has . . . instructed that an award of costs, including attorney fees, is inappropriate where the defendant's attempt to remove the action was 'fairly supportable,' or where there has not been at least *some* finding of fault with the defendant's decision to remove." *Id*. (quoting *Warthman v. Genoa Twp. Bd. of Tr.*, 549 F.3d 1055, 1059-60 (6th Cir. 2008) (emphasis in original)).

When the Court first remanded this action in 2014, it noted that the allegations in the FAC presented a "close call[.]" (Laber I, Memo. Op. at 243.) Though the Court ultimately concluded that a fact finder would not be required to apply the provisions of the VSA, or otherwise interpret it, in order to resolve plaintiffs' state law claim, the Court underscored the fact that this labor contract was clearly "lurking in the shadows of this fraud claim." *Id*. Plaintiffs' recent pretrial statements, which triggered the present removal motion, had the effect of pushing the VSA closer to the light. As set forth above, the Court remains convinced that a fact finder need not enforce the VSA, or otherwise interpret it, in order to resolve plaintiffs' fraudulent misrepresentation claim. Still, the question of § 301 preemption remains a close call. Under these circumstances, it cannot be said that defendants lacked an objectively reasonable basis for removal. Plaintiffs' request

for an award of fees and costs is therefore denied.[3] *See, e.g., Paul*, 701 F.3d at 523 (denying an award of costs and fees where question of § 301 preemption was a "close one").

## III. CONCLUSION

For all of the foregoing reasons, plaintiffs' motion to remand is GRANTED, and plaintiffs' request for fees and costs is DENIED. This matter is hereby REMANDED to the Summit County Court of Common Pleas.

**IT IS SO ORDERED**.

Dated: August 27, 2015

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3] Both sides devote much attention in the briefing to a discovery dispute that developed prior to removal. According to plaintiffs, defendants announced their plans to remove this action immediately after plaintiffs advised that they would be seeking discovery from David Fusco, defendants' lead counsel, about his relationship with plaintiffs in 2010 at the time when Hayes Lemmerz and defendants were renegotiating retiree health benefits. (Mot. to Remand at 127-28, 132, 133.) Defendants, on the other hand, argue as fervently that the record in the state court reveals that "the decision of *Plaintiffs' counsel* to involve the state court in the discovery dispute was triggered by the announcement that Defendants were contemplating removal." (Opp'n at 226, emphasis in original.) Because the Court finds that defendants had at least an *objectively* reasonable basis for removing this action, the Court will not expend additional resources, and delay this case any further, attempting to ascertain the subjective motivation of the parties or otherwise sort out this state court discovery dispute.

18